# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAMOND BREWER,

      Plaintiff,       :       Case No. 3:08-cv-311

   -vs-       Magistrate Judge Michael R. Merz

      :

PHIL PLUMMER, MONTGOMERY
COUNTY SHERIFF, et al.,

      Defendants.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Motion for Summary Judgment of Defendant Paul D. Henson (Doc. No. 41) which Plaintiff opposes (Doc. No. 42).

A summary judgment motion is a dispositive motion on which a magistrate judge must ordinarily render a report and recommendations. In this case, however, the parties have unanimously consented to plenary magistrate judge jurisdiction and the case has been referred on that basis.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine

1

issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id*. The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than *de minimis*. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying

facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655(1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Alexander v. Caresource,* 576 F.3d 551 (6th Cir. Ohio 2009), citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

**Analysis**

Plaintiff brought this case in the Montgomery County Common Pleas Court pursuant to 42 U.S.C. § 1983 to recover for an alleged use of excessive force by Defendant Paul Henson, a Montgomery County Deputy Sheriff, in arresting Plaintiff on July 30, 2006 (Complaint, Doc. No.

2). Because actions under 42 U.S.C. § 1983 arise under federal law and plead civil rights claims, this Court has concurrent original jurisdiction with the state courts and Defendants properly removed the case to this Court. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343; its jurisdiction is uncontested.

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978). The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

It is conceded that, at the time he participated in Plaintiff's arrest, Defendant Henson was

a "state actor" within the meaning of the § 1983 jurisprudence. Nevertheless, claims he is entitled to dismissal under the doctrine of qualified immunity.

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).

Qualified immunity analysis involves three inquiries: (I) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson v. Creighton*, 483 U.S. at 640.

In deciding qualified immunity questions, district courts were for some years required to apply a two-part sequential analysis, first determining whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right, and then deciding if the right was clearly established at the time the officer

acted. *Brosseau v. Haugen*, 543 U.S. 194 (2004), *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005), and *Klein v . Long,* 275 F.3d 544 (6th Cir. 2001), *both citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, the two-step process is no longer mandated in light of experience with its use; trial judges are now permitted to use their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 556 U.S. ___, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Excessive force claims are to be analyzed under the Fourth Amendment's "objectively reasonable" test, not under a substantive due process standard. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989); *Pleasant v. Zamieski,* 895 F.2d 272, 275 (6th Cir. 1990).The right to be free from excessive force is clearly established. *Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir. 1993); *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir. 1988).

As noted above, on a summary judgment motion, the Court must construe the evidence most strongly in favor of the nonmoving party. However, Fed. R. Civ. P. 56(c) limits the sources of evidence to be considered to the "discovery and disclosure materials on file, and any affidavits. . . ." Under Fed. R. Civ. P. 59(e), "affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

Defendant's Motion is supported by his own Affidavit and that of Butler Township Police Officer Jason Leslie, who participated in the arrest, as well as by Plaintiff's own deposition (Doc. No. 40). According to the facts admitted by Plaintiff in deposition, he was in Dayton for the air show as part of a flight crew. He admits consuming alcohol and then falling asleep in his street clothes. He awoke between 5:00 A.M. and 6:00 A.M. and drove to the Steak and Shake on Miller Lane where the incident occurred. When he arrived, he found a long line of cars and reclined his driver's seat to lie back. He fell asleep somewhere between the ordering station and the pickup window.

After being awakened by a restaurant employee, he drove back to the ordering station because he had forgotten what he ordered. He then fell asleep again at approximately the same place between the ordering station and the pick up window. He was driving a rented sport utility vehicle at the time. He was awakened the second time by shattering glass. He heard the officers telling him to stop the car and get out of it, but he did not do so. His foot came off the brake, causing the car to move forward to the left, toward the pickup window. He then looked up and saw Butler Township Police Officer Jason Leslie at the passenger side of the SUV and Defendant, carrying an ASP baton, at the driver's side. He testified at deposition he then stopped the car, put it in park, unbuckled his seatbelt and opened the door, whereupon Defendant pulled him from the SUV and put him on the ground.

Defendant Henson's Affidavit provides more detail than Plaintiff's deposition. Having accepted the call from dispatch to investigate the Plaintiff's situation at the Steak and Shake, Defendant positioned his cruiser behind the SUV when he arrived there. He observed the driver slumped down and to the right with his eyes closed. Henson knocked on the driver's window with his hand, identified himself as a deputy sheriff and asked Plaintiff to roll the window down so they could talk. Plaintiff responded "No." Henson then noticed that the engine was running. Henson knocked with his hand a second time, asked Plaintiff to roll down the window, and received the same response. According to Henson, this is when Officer Leslie arrived on the scene.

Henson avers that Leslie approached the passenger side of the SUV, identified himself as a police officer, and asked Plaintiff to roll down the window or open the door, to which Plaintiff gave the same response he had given to Henson. Plaintiff then drove the SUV forward and to the left, striking the curb alongside the drive through. Henson, less than an arms-length from the SUV, was required to step back onto a grassy area for his own safety.

After the vehicle hit the curb, Plaintiff remained in it. Both officers ordered him to roll down

7

the window, but he responded "no" to each of them. He then turned the steering wheel to the right and began to drive forward in the direction of Officer Leslie. It was at this point that Deputy Henson first struck the driver's window with his ASP baton. Because the vehicle was still moving toward Leslie, Henson struck the window again, shattering it.

Officer Leslie's Affidavit confirms Deputy Henson's testimony, particularly that Plaintiff cut the steering wheel hard to the right and accelerated in Leslie's direction after hitting the curb on the left. Even then Plaintiff would not get out of the vehicle voluntarily and had to be removed. Plaintiff was charged with obstructing official business and operating a motor vehicle while under the influence of alcohol.

Plaintiff's entire evidentiary support for his opposition consists of (1) the transcript of Plaintiff's trial on the charge of obstructing official business in the Montgomery County Common Pleas Court, (2) Officer Leslie's Offense Report on the incident, and (3) an Affidavit from Andrew J. Scott, III (Doc. No. 42, Exhibits 1, 2, and 3). Plaintiff himself did not testify at the trial and does not provide an Affidavit[1] or cite any facts from his own deposition.

None of the three sources used by Plaintiff is a permitted source under Rule 56. Plaintiff offers no authority for considering testimony from an antecedent trial. The police report is not sworn to and is also not authenticated as required by Fed. R. Civ. P. 56(e). The Scott Affidavit fails to satisfy Fed. R. Evid. 702 as will be addressed below.

Plaintiff asserts that the genuine issues of material fact are (1) the "timing of Defendant's

---

[1] Of course, the Court could not consider an affidavit from Plaintiff which contradicted his deposition testimony. It is well settled that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his [or her] earlier deposition testimony." *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 315 (6th Cir. 1989), quoting *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986); accord *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)(quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969); *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (9th Cir. 1975); *Camfield Tires, Inc., v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir. 1983).

first strike to Mr. Brewer's window with his ASP", (2) the amount of time that elapsed before Defendant struck Mr. Brewer's window, at eye level, with enough force to shatter the glass," and (3) "the timing of the vehicle moving the second time." (Response in Opposition, Doc. No. 42, at 7.) The Court finds these questions of fact are not material because, accepting the view of these factual questions most favorable to Plaintiff, Defendant Henson's use of force was objectively reasonable.

When Deputy Henson arrived at the scene, he was confronted with a large motor vehicle which was being operated by someone who apparently (and admittedly) was asleep or intoxicated.[2] The driver repeatedly refused to roll down the window to talk, even when commanded to do so by two uniformed law enforcement officers. It matters not at all whether his failure to respond was the result of defiance or incoherence.

According to Officer Leslie's Affidavit, he did not hear the glass in the driver's window break until after the vehicle had first pulled forward to the left, Plaintiff had again refused commands to roll the window down, and Plaintiff had cut the steering wheel "all the way to the right and depressed the accelerator." (Leslie Affidavit, Doc. No. 41-2, at ¶ 9.) Henson testifies the first ASP strike is only after the vehicle moves forward twice, but even if he struck the window with the ASP before that, it is uncontroverted that the window did not break on the first strike. Plaintiff's deposition testimony does not controvert these facts because he claims he was asleep until the glass shattered.

Let us suppose for the sake of argument that Deputy Henson decided to break out the window before there was any movement of the car. He and Officer Leslie even at that point were confronted with an apparently intoxicated driver of a large vehicle in a crowded parking lot who repeatedly refused to respond to verbal commands to roll down the window. Plaintiff offers no

---

[2]The original citizen call had indicated a suspicion of intoxication.

suggestion about what would have been an objectively reasonable use of force under these circumstances. At the very least the officers were under a duty to determine if Plaintiff could safely operate the vehicle and they could not get him to do anything to cooperate with them in making that determination. Because the doors were locked and the windows were rolled up, there was no other apparent way to get the Plaintiff out of the vehicle besides breaking the window. Even after the window was broken and glass got in Mr. Brewer's eye, he would not come out voluntarily and had to be removed forcibly.

> Plaintiff argues
>
>> If, as Officer Leslie's testimony and written police report could lead one to believe, the Defendant did strike the Plaintiff's window with significant force before the vehicle moved while Mr. Brewer was visibly incoherent, the Defendant's actions would not qualify as reasonable according to the Supreme Court's analysis as established in *Graham v. Connor* [ 490 U.S. 386, 394 (1989)].

(Response in Opposition, Doc. No. 42, at 12.) The Court disagrees. Both officers had, even before the vehicle moved the first time, reasonable suspicion that Plaintiff was driving a large vehicle in a crowded place while intoxicated to the point of falling asleep behind the wheel. How were they to investigate further without talking to Plaintiff, who refused to talk to them? How could they further the investigation without getting Plaintiff out of the vehicle? What other force, besides breaking the windows, could they have used to get him out? Plaintiff refers to the vehicle as "stopped" and "no threat to the officers or the public." Id. at 14. Clearly the vehicle was "stopped" at certain points in time, but Officer Leslie could not tell if it was in park or drive. And to suggest that an SUV in drive with an admittedly "sleeping or otherwise incoherent occupant" is no threat of serious physical harm to persons nearby defies common sense. This is in no way like a situation where police officers come across a car parked by the side of the road where the driver has parked to "sleep it off." It does not matter, as Plaintiff asserts ( *Id.* at 16) that he was non-violent because he admits in the same breath that he was semi-conscious. A drunk driver in a crowded place,

particularly in a large vehicle, does not have to be intending to harm anyone in order to do a great deal of harm.

In support of his claim that the use of force here was not objectively reasonable, Plaintiff relies on the Affidavit of Andrew Scott (Ex. 3 to Doc. No. 42). The Court accords the Scott Affidavit no weight at all.

Under Fed. R. Civ. P. 56(e), an affidavit on a motion for summary judgment must set forth facts – or in the case of an expert, opinions – which would be admissible in evidence and show that the witness is competent to testify to the matters stated. Federal Rule of Evidence 702 sets forth the requirements for the admissibility of expert testimony as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The wording of the rule reflects the now-standard inquiry set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993) The gatekeeper language of *Daubert* is applicable to all expert testimony, regardless of whether it is "scientific" or not. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997); *see also United States v. Thomas*, 74 F.3d 676, 681 (6th Cir. 1996), and *Berry v. Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994). "[B]eing an expert does not lessen the burden one has in rebutting a motion for summary judgment. In fact, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word

for it." *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) citing Advisory Committee note to Fed. R. Evid. 702.

When measured against the Fed. R. Evid. 702 standard, the Scott Affidavit is entitled to no weight because it consists entirely of conclusory opinions with no foundation and no basis to accept Mr. Scott's opinion.

## Conclusion

Having considered the evidence admissible on a Rule 56 motion in the light most favorable to the Plaintiff, the Court finds as a matter of law that Deputy Henson's use of force in breaking out the window of Plaintiff's vehicle was objectively reasonable. Given that conclusion, Deputy Henson violated no constitutional right of the Plaintiff. Given that conclusion, no policy of Defendant Sheriff can possibly have caused a violation of Plaintiff's constitutional rights. Defendant Henson's Motion for Summary Judgment is granted. Based on that decision, the Court finds Defendant Plummer is entitled to judgment as a matter of law.

The Clerk will accordingly enter judgment dismissing the Complaint with prejudice. January 15, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge